The fourth district appellate court of the state of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good morning. First matter we'll be taking up is 4180756, people of the state of Illinois, versus Leon S. Robinson. Counsel for the appellant, please state your name for the record. Uh, good morning. My name is Roxanna Mason. I'm from the office of the state appellate defender and I represent Mr. Robinson. Counsel for the appellee, please state your name for the record. Uh, Ben Sardinas for the state, Your Honor. And counsel, we're both ready to proceed. Yes, Your Honor. Very well, you may do so. May it please the court. There are a lot of issues in these, in the briefs. Uh, we're obviously not going to have the time to address all six of them in detail today. But when I was preparing for today's discussion, I, I saw one overarching theme that touches on all of the issues and that is absence, whether it's an absence of evidence or an absence of proper procedures. So what I would like to do today is focus my time on three of those absences, those discussed in the briefs in issues two, three, and five. Now, the first of these in issue two deals with the absence of evidence regarding the reasons why Mr. Robinson's driver's license was revoked. What we are asking is that his driving while revoked conviction be reduced from the felony that it currently is to a misdemeanor. And the reason for this is simple. In order for it to be a felony, the state had to prove a few things. It had to prove, first, that this was not his first conviction. Second, that the reason that his license was revoked was because of a DUI. And third, that the reason his license had been revoked for that prior driving while revoked was also due to a DUI. Or there are also provisions for certain leaving the scene of an accident convictions, but those don't apply in this case. So what happened here was at trial, the state introduced a simple sheet of paper from the Secretary of State's office that said Mr. Robinson was revoked on a certain date. However, it never, even at sentencing, introduced any evidence as to why his license was revoked. In the briefs, the state asserts that it's enough that they revoked the prior DUI conviction. However, even if that were enough to establish that a revocation were still in place when those fines were not paid, even the PSI only establishes that the fines and fees were not paid as of August of 2014. It's completely silent as to what happened between 2014 and 2017. For that reason, the state did not meet its burden in proving the enhancement and the felony must be reduced to a misdemeanor. The second issue that I would like to address is the third issue in the briefs, and that deals with the absence of evidence to support the state's closing argument. And there were two big flaws with the state's closing argument. First, its discussion of what it termed the cycle of abuse, and then second, its reliance on facts that simply were not introduced at trial. Now, first, the cycle of abuse evidence, it had to do with the state making arguments that the reason that, in their opinion, the alleged victim in this case, Ms. Smith, had said what she said at trial was because she was caught up as a victim in this cycle of abuse. And the prosecutor went on to talk about how it is that abuse victims and abusers behave. However, there was no evidence from any sort of expert that was introduced at trial regarding typical behaviors of people caught up in abusive relationships. And this court addressed a similar issue in People v. Stevens, where the state similarly argued about typical behaviors of the abusers of children. And this court held that that was improper when there was lack of any evidence adduced at trial regarding those behaviors from any sort of expert. Now, I think the bigger problem in the state's closing argument in this case, however, was the state's choice to refer to evidence that was not actually admitted at trial. And the state asserted that the victim in this case, Ms. Smith, had previously been battered by Mr. Robinson in February of 2017, and that he had put her in the hospital on that date. Ms. Smith never testified to that. She said that she did not remember whether he had struck her on that date, and that the reason that she went to the hospital that day was because she had tripped over her own pamphlet. Now, regardless of whether that testimony was true or not, it was the only evidence regarding that hospital visit that was admitted at trial. So it was improper for the closing argument that she'd in fact been sent to the hospital that day because of Mr. Robinson's actions when it introduced no police testimony, no medical evidence, nothing to support that argument. And this was a problem in this case because this case was a credibility contest. The jury's verdict depended on who they believe. Ms. Smith, who said that Mr. Robinson had not struck her on the day in question, and that the minor injuries that she had were not caused by him, or the bystanders who had driven past and, you know, claimed to have seen Mr. Robinson strike Ms. Smith. So anything that went to her credibility in this credibility contest case was critical. This brings me to the third issue I would like to discuss today, which is the Krinkle claim. And here the absence that we have is an absence of proper procedures. Mr. Robinson asserted after trial and before sentencing that he had received ineffective assistance of counsel because his alibi claim. And the trial judge in this case would not allow him to explain what his alibi was, who the alibi witnesses were, or what efforts he had made to inform counsel of his alibi witnesses. And because of that, the proper Krinkle inquiry was never conducted. I would direct this court to the Illinois Supreme Court's decision in People v. Ayers from just 2017, where the court said, the purpose of the preliminary inquiry is to ascertain the underlying factual basis for the ineffective assistance of counsel claim and to afford defendant an opportunity to explain and support his claim. Here, Mr. Robinson never received such an opportunity. And it matters because we don't know the strength of what that alibi claim may have been. Now, the state argues in its brief that under People v. Roddus, it was proper for the trial court to look at the other evidence and say, oh, well, gee, the evidence is so overwhelming here that no alibi could have made a difference. But that's not really the case. Without knowing who the alibi witnesses were, what they would have said, no judge can make that call. I mean, what if the alibi were, you know, that he had been in jail in Lake County on the same question? I'm sorry, may I interrupt you for a moment? Didn't the attorney testify or provide information to the trial court that it wasn't until after the trial that the defendant informed her of alibi witnesses? Yes, she made a short statement that she did not learn about the alibi witnesses until after trial. However, Mr. Robinson then tried to explain to the judge what efforts he had made to inform her before trial. We don't know what they are because the judge wouldn't let him finish his statement, but it kind of depends what those were. If Mr. Robinson had repeatedly called trial counsel dozens of times and she hadn't returned his calls, that matters. If Mr. Robinson had written letters to trial counsel saying, you know, these are my alibi witnesses, but she hadn't read those letters, that matters. So without doing that further inquiry and finding out, did Mr. Robinson try to tell her and just either because of jail protocols where visitation was limited or, you know, potentially because of her own ineffectiveness, she did not learn of it despite his efforts, that would matter to the analysis. But we didn't have that full and meritless. And that after a full inquiry, the court would rule that it would not have mattered and that there is no probable cause of ineffective assistance of counsel. But we need that full inquiry first. So, I mean, I believe that this court will grant a new trial based on our other issues in this case, but if this court chooses not to, at a bare minimum, a full and complete inquiry needs to be conducted. If there are no... Counsel, going back to the other two issues, were those issues preserved? First, starting with the closing argument issue, it was partially preserved. The portion of it dealing with the prosecutor specifically discussing the February of 2017 incident, that was objected to and preserved. The portion about the cycle of abuse, counsel did not object specifically when that statement was made. So it's arguably not preserved with regards to that portion of the issue. However, our position is that it would still be something that this court can review as plain air because of the closeness of the evidence in this case, because it was a credibility contest. With regards to the other issue, the DUI driving while revoked issue, that was not preserved. However, we cited cases in the brief, but we also believe this is plain air that this court can review because... That why he was revoked was not an element of the offense that the state had to prove? That is correct. Under Illinois law, the courts have repeatedly held that it is not an element of the offense. It did not have to be proven to the jury beyond a reasonable doubt. That's correct. So what is your position? What did the state omit? What did they not present at the sentencing hearing given we do have information in the pre-sentence investigation regarding this, right? We do not have evidence in the pre-sentence investigation regarding why he was revoked. Do we have evidence in the pre-sentence investigation regarding the prior DUI? Yes. And so it would not be appropriate for the trial court to consider that information? It absolutely would be proper for the court to consider that information for the fact that there was a prior DUI, but the mere presence of a prior DUI conviction does not prove the fact that many years later, Mr. Robinson was still revoked for that DUI. Yes, as a matter of law, when he was convicted of DUI, a revocation would have been put into place. And had this DUI conviction happened within a year of when he was Dragon Ball revoked in this case, then yes, that would absolutely be a reasonable conclusion for the court to draw. But in this case, the DUI happened many years prior to the alleged Dragon Ball revoked in this case. So absent any evidence regarding why he was revoked, the state did not meet its burden regarding the enhancing element. And what is the state's burden with respect to the enhancing element? I mean, we know they don't have to prove it beyond a reasonable doubt at trial because it's not an element of the offense. So what is the burden? Well, and that's a little unclear. Based on the fact that it's a sentencing issue, it seems that it would at least be clear and convincing evidence that there would have to be, or at least at a bare minimum, some evidence presented. Regardless of what the burden is that this court ultimately determines, the fact is there was no evidence presented regarding why he was revoked. So whether it's clear and convincing or even if it's as low as probable cause, they did not meet that burden. So we can agree, whatever the burden is, it's going to be with the state. But isn't it circumstantial or could it be circumstantial evidence that a license was revoked for DUI and PSI, there's no indication of reinstatement? PSI arguably is pretty updated information, I would imagine. Yes and no. Because the PSI is updated information with regards to convictions because it's standard protocol for an officer who is preparing a PSI to pull a defendant's whole criminal record in this court and held in People v. Owens that the court can rely on it for criminal convictions. However, information from the Secretary of State is not something that's routinely included in PSIs in the same way that criminal records are. And here we don't have any indication that the PSI writer obtained any documentation from the Secretary of State regarding the status of the driver's license. We simply have the recitation of facts regarding his criminal record. That would be a glaring error on behalf of the probation office wherein we're dealing with a case where there are DUI charges, driving while license suspended or revoked. I would expect that to happen. If it did happen in this case and if the PSI writer did do that research, they did not include information regarding the current status of his license or why it was revoked in the PSI. And I suppose that's the point I'm sort of delving into and that is with driver's abstract, once a license or just in general, I think we all understand once a license is revoked it's not like a suspension. It's gone and there's a process wherein one has to go through to reactivate their license. And we all know in the driving while license suspended in DUI context, some individuals spend many, many years or may never get their licenses back. So you expect to see, you look for the reinstatement finding on the abstract. And yes, and that's part of the problem we have in this case is that there was never a complete abstract in the record. So we don't know whether that reinstatement is there or not. And it was a state's burden to get that evidence into the record. Since it's not there, the trial court's finding was improper. How is this really different than Owens? Oh, it's different from Owens for a couple of reasons. I went back and I re-read Owens again last night and Owens had some interesting facts. And at first at the trial level in Owens, there actually was discussion of a full driving abstract. And there was discussion extensively in Owens in the trial court regarding the details of the revocation. But also in Owens, there was evidence, I want to get the exact quote. Let's see. This court said in Owens in paragraph 43, indeed a review of the PSI reveals a 2007 mandatory revocation of defendant's license following DUI convictions in 2006 and 2007. The license revocation was extended in 2008 and never reinstated. So in Owens, right there in the PSI, it said this revocation was in place and that there had not been a reinstatement. Whereas in this case, we simply don't have those facts in the PSI. Our PSI was not as detailed as the PSI in Owens. So for that reason, it's factually distinct. If the court has no further questions, we would request that this court grant the various forms of relief that are laid out in the briefs. I hear no further questions. Mr. Sardinus. I think you tried to unmute. I missed the button, Your Honor. I apologize. May it please the court, counsel. I will just be briefly addressing a couple of the issues that the defendant decided to raise in this case. But as always, I'm at the disposal of the court regarding any other issues that defendant didn't talk about today that the court might have questions about. Well, can you clear up the standard or the burden of proof with regard to the driving while license suspended issue? Your Honor, I believe it is clear and convincing evidence, but I honestly did not realize that that would be an issue. If not, I would have included it in the brief, mostly because I guess being a defendant vastly differ on how much the PSI proves in this case. I think under any standard, the PSI proves that the revocation occurred based on the DUI that defendant received in 2013. The particular section in the PSI that discusses that specifically mentions that notice was sent to the Secretary of State in January of 2014, sent SOS notice, and the state has provided for the court the relevant legal standard and statutes that govern revocations. And upon receiving the revocation in the Secretary of State's office, the Secretary of State was mandated to revoke defendant's license as a result of the DUI until services and fines and fees were completed, at which point he could then have his license restored. And those stats are in the state's brief. And as of the date of the PSI, which was in 2018, defendant had failed to pay any of the fines and fees as of the PSI date, which totaled somewhere around $2,700, had failed to complete any of the services under the DUI statute, and had simply done nothing to advance his driving under the influence offense and to deal with that in order to receive his license back. And the subsequent revocation offense, the year after that revocation, would still fall under the same revocation offense. And then subsequently, this revocation offense, the driving while revoked offense, falls under that DUI. I mean, I think it's pretty clear based on the evidence that we have in the PSI, the fact that the revocation was still effect based on the abstract that was admitted, that all this falls under the same DUI. Defendant never restored his driver's license. And I'm kind of at a loss as to what else the state would have to provide the court to prove that he did, in fact, drive under the influence and then have two and I mean, the state doesn't need to prove that the law exists. It is a the trial court is presumed to understand how the law works. Sir, counsel, I need you to back up. I need you to back up just about 10 seconds because you go out every once in a while, the audio, we don't lose much, but maybe a word, but we did lose a little bit. So just back up 10 seconds as to where you were. Sure. I apologize, Your Honor. It might be my connection on my end. Just simply that the state doesn't need all regarding how revocation of licenses works. And the law here states that defendant would never have received his license back and that it was automatic. Why, in this case, it was automatically what I'm sorry, suspended, Your Honor. I apologize. Sorry, revoked, revoked. I'm sorry. I revoked as a result of the DUI. Well, opposing counsel says that you simply needed, well, the state, not you, you weren't trial counsel for the state, but the state simply needed to present a complete abstract. Why didn't that happen here? Your Honor, I don't know why a complete abstract wasn't admitted, probably because the PSI lays out exactly all the facts that are needed in this case. And the abstract merely proves that the revocation was still in effect. But I submit that even without the abstract, the PSI itself proves defendant did nothing to address any of the services or fines or fees that are required under state law. And again, the state attached those statutes, which defendant doesn't even address in his reply or in the argument before this court that govern how he would receive his license back. And in the absence of any other reasonable explanation for how defendant could have received his license back legally, the only reasonable and logical conclusion is that the revocation was still in effect based on the PSI. And then we have further proof based on the fact that the abstract was attached that says the revocation is still in effect. It doesn't say specifically that that revocation was as a result of the DUI offense, but we have all the rest of the information that proves that defendant did nothing to establish or to fix the problems that led to his revocation. And would never have received his license back under state law. So on that point, I'm going to go back to your initial argument where you were talking about the fact that the defendant did not do what he needed to do to pay the fees, costs, whatever it was. Can you affirmatively point that the non-payment was towards the reinstatement or the pen point that your honor, if you review the statute that we attached to the brief, I believe in that statute, it specifically discusses that in order to have drying. Yeah. In order for driving privileges to be restored, all of the reinstatement fees have to have been paid to the secretary of state's office and services have to be completed. That's under 625 ILCS 5-6-208.1. That's attached to the statute and that's attached in the statutes presented in the brief. So again, the court doesn't, it is not required, the state's not required to prove the law to the court. The court's assumed to know all the relevant statutes absent any other indication otherwise as to how, what governs the case in front of the court. So the state wasn't required to provide the law to the court as an element of proving that the sentencing enhancement should have been given in the case. Sure. And I understand. I'm just trying to be sure that, you know, sometimes probation fees or fines in a case, we have to be sure that the non-payment is associated with the offense that caused the license to be revoked. That was sort of my inquiry. Well, your honor, if you review page 227 of the record where it discusses the DUI offense, it has the fines and costs listed as paid and that the total assessment on, in August 11th of 2014 was sent to collections for the $2,700 that were owed for assessments under the DUI offense. So as of the date of the PSI, which was in the sentencing hearing in 2018, that was still a relevant law and defendant has a correct statement of the situation and defendants provided no information that would seem to disprove that. I obviously, I understand it's the state's burden to prove this, but all the information that was before the trial court proves that defendant in fact owed significant assessments and had not completed services. I'd like to reiterate that it's not just money. It's any of the required services to receive the license back to receive his license back as a result of the DUI offense. So I kind of struggled to see what else the state could have provided it other than, I guess, if the abstract had said it was referencing back to the DUI offense, but I presume that the state's attorney, looking at the situation and what was in the PSI, assumed that that was sufficient proof to prove that it was based on the previous DUI offense. If the court has no further questions about this issue, I'd just like to move on to the other issues that defendant raised in the case, or this argument, I should say. So regarding the trial prosecutor, the claim that the trial prosecutor's closing argument, we would like to point out- Closing argument, the closing argument comment. What about the closing argument? I'm sorry. Yes, your honor, the closing comment argument. I apologize if it's a connection issue on my part. It's not. It's a connection problem. So we'll just work through it. Okay. The state's closing argument directly is a dynamic that is brought through at trial where that Ms. Smith and the defendant were in an abusive relationship and the defendant was abusing Ms. Smith. And based on evidence that was contained in the record, the trial prosecutor argued that the reason that Ms. Smith contradicted herself from what she said at the scene and what four eyewitnesses declared at the scene and went into court and testified as the opposite of what statements were was because she was in an abusive relationship where she affirmatively stated she would do anything to protect defendant because she loved defendant. And that dynamic was the reason for why she decided to testify as the opposite of what four eyewitnesses stated in court and what she said at the scene to the officer. And the reason that we can tell that this discussion was not one of a general issue amongst domestic abusers but was actually about their relationship is that the prosecutor in this case specifically asked Ms. Smith about her relationship with defendant. And Ms. Smith on the stand admitted that defendant got physical with her on several different occasions and was further evidenced by the fact that in 2017, which the trial prosecutor asked her about, she tacitly admitted that she had another physical incident with defendant. And I'm reading directly from her testimony. So did defendant get physical with you on February 1st of 2017? There might have been a situation that happened. Did you have to go to the hospital for that? Yes. Had defendant gotten mad at you, gotten enraged at you before you went to the hospital? It could have happened. It could have, we could have gotten to an argument again. That's might've been what happened. She tacitly admits on the stand in February, 2017, that they got into a physical engagement and that she had to go to the hospital for it. And then later on the stand changes her story to say, Oh no, actually I'm just clumsy. I was wearing long pants. I tripped. I fell over. Counsel, may I interrupt you? I think all of that is fair game for the prosecutor to comment on the specifics of what you just mentioned, but then to refer to this as the cycle of abuse, inferring that there's some sort of inference of common knowledge that the jurors are aware of this concept of cycle of knowledge. And the prosecutor in closing says, we've all heard those excuses before. No one testified to any sort of syndrome of cycle of abuse. So certainly the specifics that you've just talked about would be fair game for the prosecutor to comment on. But then to bring in this more global concept of cycle of abuse, where is the evidence of that? Your Honor, I just- Mr. Sardenas, before you answer that question, let me add a little bit to that. When you look at the prosecutor's comments, it seems like the prosecutor is talking about incidents as part of this cycle of abuse that we have zero evidence of in this case. You leave dishes in the sink for too long. You forget to pay a bill. Then things get physical. It seems like it's small, but then the person flies into a rage. He hits, he punches. If you get hurt, you have to tell the people at the hospital that he didn't do it. I mean, where's any evidence related to these specific incidents that the prosecutor is describing in arguing this cycle of abuse? Separately, just to make sure that I get to both questions. First, as to the cycle of abuse portion of what that statement is saying, the way that I took that closing argument is that the prosecutor was referring to the relationship that the two of them had. It was specifically referring to what is evident by both Ms. Smith changing her story about what she said at the scene to when she sat at the courtroom, and what she said about the February 2017 incident at the beginning of her testimony about the incident, and then at the end of that statement, where she then changes her story while she's on the stand about whether or not it was an issue of her tripping. That discussion of the cycle of abuse, and we've seen it before, refers specifically to what their dynamic is, not some global discussion of what most people in domestic abuse cases or domestic abusers dynamics are, and how abusive relationships normally operate. The way that I take that comment is that Ms. Smith and defendant have a clearly established dynamic. He abuses her, she gets hurt, and then when consequences almost result for defendant, she lies about it. And she did it at trial, and she did it with regards to this particular conviction, and regarding the February 2017 incident. So the fact remains that, I apologize, that that discussion is about them. It is not about domestic abusers, the difference from the cases that defendant cites regarding the case involving sexual abusers in general. The trial prosecutor didn't say, well, you know, in every single domestic abuse relationship, this is how this operates. The woman will simply be abused, and she'll go in court, and she'll lie, because she can't, is stuck in an abusive relationship, and abusive relationships make you lie in order to defend your abuser. That's not what the statement was here about, and this was not in the absence of any proof of this dynamic, because dynamic is shown based on how she reacted at the scene, versus how she said things in court, and how she changed her testimony about the February 2017 incident, while she's in the middle of her testimony. Justice Wright, regarding the question about the dishes, and that particular dynamic, I think what she was, the trial prosecutor was trying to do, was to add kind of an illustrative example, or flair kind of, for what could have possibly triggered the February 2017 incident. I don't think that that rises to the level of any kind of prejudicial comment about the general nature of abusive relationships, because we have an incident here, which was discussed, where Miss Smith tacitly admits that she abused in the night at the hospital, here's her story in the middle of her testimony. So I understand, back up for us, she admitted what? I apologize, your honor, that she admitted, I'm sorry, what was I referring to when she, when I said she admitted, I just want to make sure that I got the right part of my sentence. I believe you're referring to the incident, where she did go to the hospital. Right, your honor, so that, that, that was kind of an illustrative example, because Miss Smith, simply on the stand, refused to tell the truth about the incident, after tacitly admitting that wasn't an abusive incident, and then changing her story in the middle of it, that that was just kind of an illustrative example of what that dynamic would be like. But even if that particular portion about, you know, a hypothetical example, you know, where you have the dishes, and, and, you know, you don't do the dishes, and then your, the abusive partner gets mad and decides to get physical, even if that is not entirely within the bounds of what the evidence shows in this case, I don't think it falls under the kind of category where, with, like in the case, the defendant or the prosecutor is just referring to the general situation involved in domestic abuse cases, or the general nature of why people would lie on the stand for their abuser. I think it goes specifically that that comment doesn't fall in that category of what the courts have said is improper for the prosecutor. And then, again, I'd like to point out that we haven't addressed just the general nature of the, of the case, but I, to argue that this case, that the state didn't prove that this was, that this happened, and that there wasn't sufficient evidence to prove that, I think is, is just, is a laughable assertion. Four eyewitnesses saw the abuse happen in the middle, it was in the middle of the street in broad daylight. And we have pictures of the, of the dishes or something like that, the hypothetical idea, it would somehow prejudice defendant, I think is just, is, is illogical based on the wealth of evidence and the number of people that testified against defendant in this case. Were you going to address the Krankel issue? Yes, your honor. I, I will move on to the Krankel issue if the court has no further questions about this. So regarding the Krankel issue, the state posits that based on the new trial courts are permitted to consider the factual merits of an argument that a defendant is making and as a joint and ineffective assistance of counsel claim, one defendant postulates something that is bald facely meritless. The trial court does not have an obligation to complete, or the trial court's inquiry does not have to continue further when someone, when a defendant makes a bald facely meritless claim. Like there are, were alibi witnesses that, that my, my lawyer didn't call in the case. And we can tell that that's bald faced because four different witnesses saw defendant beating this woman on the side of the street. Two of them identified defendant as the person doing it. Defendant was found in Ms. Smith's vehicle immediately after the abuse incident occurred. So it is of course a completely meritless claim, the idea that there are alibi witnesses that are going to come out and somehow prove that defendant was not at the scene of the crime. And the, and the trial court's inquiry doesn't have to go any farther because there's no need for the court to entertain a meritless claim. That's just obviously meritless. It would be the same as if defendant had walked into the room and said, Jesus Christ came down and threw a thunderbolt at me. And that's, I couldn't have been there because I was launched 50,000 miles across to the other side of the, of the world. The court doesn't have to continue inquiring, well, counsel, did you inquire into the validity of the defendant's claim? It's, it is simply a meritless claim. And the trial court's inquiry doesn't have to go any farther than that in ascertaining whether or not a patently meritless claim needs to be inquired into further. So if the court has no further questions about any of the issues in this case, we would simply ask that you affirm the lower court's decision. Thank you. Ms. Mason for the appellate rebuttal. And Ms. Mason, could I ask you to address counsel's last argument? What about the thunderbolt argument? You're muted Ms. Mason. You're muted. Sorry about that. It's entirely possible that if the court had conducted a proper inquiry and asked that simple question of who are your alibi witnesses, if, if Mr. Robinson had said, given what Mr. Sardinus just said, of course the court under Rodas can say, no, that's obviously not true. But we don't know because the court didn't ask that question. Who are your alibi witnesses? What's your alibi? It's just as likely, just as possible that it was something that could I was under arrest that day. Here is my alibi witness, the arresting officer. If that's the case, then that turns this case on its head. And these eyewitness identifications are suddenly not so strong. Now, was it probably something somewhere in between my example and Mr. Sardinus's example? Sure. But we don't know unless the judge asks the question. So that's why we're asking this court to send it back for the judge to ask that question so that we can actually make a well reasoned determination on this issue. So just so I understand. Oh, go ahead. Does it really turn the case on its head or does it at the most point to confusion on the dates? I mean, is there really anything that would suggest this didn't happen? If there were alibi witnesses, you know, if they were, you know, let's say there were police who said that Mr. Robinson was in jail for that entire month, then no, I don't think that we would have a confusion as to the dates, because it's not just, you know, the victim saying this occurred on this one date. It's the victim saying it occurred on this one date. It's the police officers who were called to the scene on that one date. It's their dashboard camera footage from that one date. Like if somebody battered Ms. Smith, it happened on this particular day. And if Mr. Robinson was not available to have been the person who allegedly attacked Ms. Smith, he couldn't have done it. He couldn't have been the perpetrator. Now, you wouldn't concede that the strength of the state's case, the strength of the evidence that's been presented comes into play in the court's evaluation as to how extensive the positive that in a case where you have multiple eyewitnesses positively identify the defendant, that there's no need to go any farther with this. But do you say no, that's not the case? It doesn't matter how strong the case against the defendant might have been. The judge in a would they upset? My position is closer to the second thing that Your Honor suggested, that the judge at least has to ask that question of what is the alibi. And my reason for that position is the Supreme Court's decision in People v. Ayers that says that the whole point of this inquiry is for the defendant to at least get to say what his claims are and try to support those claims. But the Well, Rodis does allow the judge to consider the strength of the case, the state's evidence as one factor in the inquiry. The judge can't make that determination until he knows what the defendant's claim is. He can't determine whether the claim is ridiculous if he doesn't know what the claim is. If we don't know what the claim is, then we can't determine whether it could have overcome the state's evidence. I mean, in any case, like Krankel only comes up after someone has been found guilty beyond a reasonable doubt by 12 members of the community. So in any case, where Krankel's an issue, there's going to be evidence of the defendant's guilt. There's going to be evidence to convince 12 regular folks that he definitely did it. So if we were to apply the state's test that, oh, well, if we think he's guilty, we don't have to ask any questions, then Krankel dies. There is no Krankel at that point, and defendants have no way to raise these concerns. And that cannot be what the Supreme Court intended when it decided Rodis. It's for that reason that we ask that this court at a bare minimum order a new Krankel inquiry, but for the reasons previously discussed today and in the briefs, we would ask that various counts be vacated or at a minimum that a new trial be granted. All right. Very good. Thank you, counsel. Both this matter will be taken under advisement. This court now stands in recess.